# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MARIA MALDONADO, | Case No. 1:16-cv-00942-SAB |
|---|---|
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 19, 24) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Maria Maldonado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from osteoarthritis of the neck, back, and bilateral knees, injuries to her upper extremities, depression, and anxiety. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 12.)

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on December 6, 2012, alleging disability beginning November 19, 2010. (AR 175-181.) Plaintiff's application was initially denied on April 2, 2013, and denied upon reconsideration on October 15, 2013. (AR 91-94, 100-104.) Plaintiff requested and received a hearing before Administrative Law Judge Laura Fernandez. ("the ALJ"). Plaintiff appeared for a hearing on March 5, 2015. (AR 29-64.) On July 17, 2015, the ALJ found that Plaintiff was not disabled. (AR 16-24.) The Appeals Council denied Plaintiff's request for review on May 5, 2016. (AR 1-8.)

### A. Relevant Hearing Testimony

Plaintiff testified with the assistance of an interpreter at the hearing on March 5, 2015. She graduated from high school in Mexico and she understands very little English. (AR 44.) She can read a little bit of English, she can read very little of the newspaper, and she cannot watch TV in English. (AR 44.)

She normally gets up at 8 a.m. and she sometimes goes out. (AR 41.) She gets help putting on her clothes and shoes. (AR 46.) It is difficult for her to put her brassiere on because she cannot snap it on, so she uses one that she pulls on and she needs help to pull it on. (AR 46.) She is able to put on a shirt. (AR 46.)

She does not do too many household chores because of her pains. (AR 41-42.) Her husband helps her prepare the meals and he does the dishes and laundry. (AR 42.) Her ability to do chores is affected by the pain in her hands and she has lost strength in her hands. (AR 42.) She has trouble grasping things that are a little heavy and she has dropped objects, such as plates. (AR 43.) When she is standing up, she has a lot of pain in her knees, and when she is sitting, she has strong pain in her lower back. (AR 42.)

She goes grocery shopping with her daughter once a week for 30 minutes at most. (AR 44-45.) She goes to church every week for an hour, but she can only sit for 30 minutes and then she has to stand and rest before sitting again. (AR 45.) She does not kneel at church. (AR 46.)

1     She has a driver's license, but she is not currently driving because of the medication that she is taking. (AR 44.) She last drove three months ago in a small town when she was not taking the medication. (AR 45.) Her daughter brought her to the hearing. (AR 45.)

    She last worked in 2010 for Foster Farms boning chicken meat which involved standing all the time and using a knife to cut the meat. (AR 38.) She lifted and moved an average of 25 lbs. (AR 38-39.) She stopped working because she had a lot of pain and she could no longer work there. (AR 39.) She saw the company doctor, Dr. Rawlings, and he gave her a letter saying that she could no longer work there. (AR 39.) Her pain increased over time and she thinks it was because she worked in cold and hot weather. (AR 39.) Her knee, back, and hands cause her about the same amount of pain. (AR 40.)

    After seeing Dr. Rawlings, Plaintiff started seeing Dr. Frank Fine in 2011 and she is still seeing him. (AR 40.) She sees Dr. Fine every two months and he gives her OxyContin for her pain. (AR 40.) She previously received inflammation medication. (AR 40.) She pays to see Dr. Fine. (AR 40.) The doctors have told her that she has pain because of osteoarthritis and that there is no cure for that. (AR 42.)

    She also sees her family doctor at Golden Valley for the extreme stress and depression that she is experiencing since she stopped working. (AR 41.) He sends her to a counselor who gives her Zoloft. (AR 41.) She feels that her stress and depression affect her ability to think and concentrate. (AR 42-43.) She has problems focusing on tasks and she has problems completing a project because of her focus. (AR 43.)

    She is able to stand for 10 minutes; walk for 15 minutes; lift a gallon of milk and small things; and bend at the waist, but she then stays in that position for a little bit. (AR 46-47.) She cannot kneel. (AR 47.) She can only raise her arms to a 90-degree angle parallel with the floor and then she feels pain in her shoulders. (AR 47.) She can reach her arms forward 90 degrees. (AR 48.)

    A vocational expert, Jose Shapiro, also testified at the hearing. (AR 49-62.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015.
- Plaintiff has not engaged in substantial gainful activity since November 19, 2010, the alleged onset date.
- Plaintiff has the following severe impairments: osteoarthritis of the neck, back, and bilateral knees.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours, and stand and walk 6 hours in an 8-hour workday, with the ability to alternate between sitting and standing no more often than every 30 minutes. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but must never climb ladders, ropes, or scaffolds. She can frequently bilaterally use hand controls, handle, finger, feel, and reach overhead. She can occasionally have concentrated exposure to extreme cold and vibration, but must avoid unprotected heights. Lastly, she can perform simple routine tasks.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on December 15, 1961, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Plaintiff subsequently changed age categories to closely approaching advanced age.
- Plaintiff has at least a marginal education and is able to communicate in English.
- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from November 19, 2010, through the date of this decision.

(AR 20-33.)

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by finding that her psychiatric impairment and bilateral upper extremity impairment are not severe at step two, by discrediting Plaintiff's testimony, by rejecting the opinion of Plaintiff's treating physician, Dr. Fine, and in determining Plaintiff's RFC.

**A. Step Two**

Plaintiff argues that the ALJ erred by not finding that she had a severe psychiatric impairment or bilateral upper extremity impairment at step two. Plaintiff asserts that the ALJ did not even discuss whether her bilateral upper extremity symptoms constitute a severe impairment. Plaintiff argues that the ALJ erred by not finding that Plaintiff's psychiatric condition was a severe impairment because the overall medical record supports that her psychiatric condition is severe.

Defendant counters that the ALJ properly found that Plaintiff's depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in her ability to perform basic mental work activities, and therefore, were not severe. Defendant also argues

that no medical sources opined that she was more limited than the upper extremity limitations in the RFC, so any error is harmless.

In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity. Id. However, symptoms are not medically determinable physical or mental impairments and cannot by themselves establish the existence of an impairment. Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996). In order to find a claimant disabled, there must be medical signs and laboratory findings demonstrating the existence of a medically determinable ailment. Id. "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings. . . ." Id.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, 80 F.3d at 1290 (citations omitted). Courts have found that step two is "a de minimis screening device [used] to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. No. 85–28 (1985); Smolen, 80 F.3d at 1290). When an ALJ considers limitations resulting from an impairment in formulating the RFC, any error in not considering the impairment to be severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Stout, 454 F.3d at 1054-55.

In this instance, while the ALJ did not discuss Plaintiff's bilateral upper extremity impairment at step two of the sequential analysis, the ALJ did conduct an analysis of Plaintiff's bilateral upper extremity impairment in formulating the RFC between steps three and four. (AR 20-23.) Although the ALJ found Plaintiff's depression and anxiety non severe at step two, she also discussed Plaintiff's reported mental problems in formulating the RFC when she explained why she gave little weight to Plaintiff's allegations of disability. (AR 22.) In addition, the Court notes that the ALJ limited Plaintiff to simple routine tasks. (AR 20.)

Since Plaintiff "passed" the "de minimis screening device" at step two of the sequential analysis and the ALJ considered Plaintiff's bilateral upper extremity impairment, depression, and anxiety in formulating the RFC, any error by the ALJ in failing to include Plaintiff's depression, anxiety, or bilateral upper extremity impairment as severe impairments at step two was harmless. Therefore, the Court's analysis proceeds to determine whether the ALJ erred in assessing Plaintiff's credibility.

**B.     Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in her analysis of Plaintiff's credibility. First, Plaintiff contends that the ALJ's determination on credibility is not supported by specific cogent reasons and that the ALJ failed to consider Plaintiff's injury and medical background properly. Second, Plaintiff contends that the ALJ failed to adequately consider the Cotton test criteria and that because of this error she should be found credible. Third, Plaintiff asserts that the ALJ improperly discredited Plaintiff on the basis of her activities of daily living. Defendant counters that the ALJ properly discredited Plaintiff's testimony by providing clear and convincing reasons for discrediting Plaintiff.

Plaintiff states that she has satisfied step one of the Cotton test because she has produced objective medical evidence of her impairments and step two of the Cotton test because she has shown that the impairment or combination of impairments could reasonably be expected to produce some degree of symptoms. The Ninth Circuit explained in Bates v. Sullivan, 894 F.2d 1059, 1071-72 (9th Cir. 1990), that the Cotton case applies only to disability determinations rendered prior to January 1, 1987. As the ALJ's decision in the instant case was rendered on July 17, 2015, the Cotton case does not apply. However, there is another two-step test that an ALJ uses to determine whether a claimant's testimony is credible.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

In this instance, the ALJ stated:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to case the alleged symptoms; however, the claimant's statements concerning the intensity,

9

persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(AR 22.)

Therefore, the ALJ found that Plaintiff met step one by presenting objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of the symptoms alleged. The ALJ then moved to step two of the credibility analysis and detailed several reasons to discredit Plaintiff's testimony. (AR 22.) Next, the Court shall address the reasons stated by the ALJ to determine if the ALJ provided clear and convincing reasons supported by substantial evidence to find Plaintiff's testimony not credible.

1. <u>Conservative Treatment</u>

First, the Court discusses the ALJ's reason that Plaintiff received conservative treatment. The ALJ found that Plaintiff "received conservative treatment, such as medications, and there was no mention of surgery or extraordinary therapies or hospitalizations." (AR 22.) The ALJ also found that Plaintiff "reported mental problems, but there are no reports of psychiatric hospitalization, mental health treatment, or counseling. In addition, [Plaintiff] has not required any significant treatment for this condition except medications." (AR 22.) Plaintiff did not specifically address this reason provided by the ALJ for discrediting her testimony.[2] Defendant asserts that the conservative treatment belies Plaintiff's complaints of disabling symptoms and limitations.

Impairments that can effectively be controlled with medication are not disabling and the conservative nature of treatment can be considered in evaluating subjective complaints. See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, the ALJ noted that Dr. Rick Po-Chang Huang prescribed anti-inflammatory medications and Ibuprofen, which Plaintiff reported assisted her with her pain, and that subsequent treatment notes indicated that Plaintiff's complaints of neck, bilateral hand, and

---

[2] The Court notes that after Defendant filed her opposition, Plaintiff had an opportunity to file a reply. However, she did not file a reply.

bilateral knee pain were addressed conservatively with medications. (AR 21, 308-21, 350, 358, 369, 377, 392, 539-542.) On November 8, 2010, Dr. Dilip Banerjee noted that Plaintiff was being treated with Ibuprofen for back and knee pain and that Plaintiff's back pain is helped by Ibuprofen. (AR 350.) On December 3, 2010, Dr. Huang prescribed NSAIDs and a heat pad for Plaintiff's back, knee, and hands. (AR 358.) On December 29, 2010, Dr. Huang noted that Plaintiff' active medications are Ibuprofen when needed for pain and anxiety and sleep medications. (AR 369.) On February 18, 2011, Dr. Huang found that Plaintiff's degenerative disk disease in her lumbar spine was not responding to Ibuprofen, so he prescribed Vicodin, but also noted that she may continue NSAIDs and heat pad. (AR 377.) Dr. Huang also found that Plaintiff's knee osteoarthritis and arthritis in her hands were stable on NSAIDs. (AR 377.) On July 1, 2011, Dr. Huang found that Plaintiff's degenerative disk disease of the lumbar spine, osteoarthritis of the knee, and arthritis of the hands were overall stable and refilled the prescription for Ibuprofen. (AR 392.) On November 20, 2013, Plaintiff stated that the medications that Dr. Fine gave her are helpful. (AR 541.) She was using Cymbalta daily for Fibromyalgia symptoms, Lortab periodically for pain and reports 50% functional improvement with this medication, and Mobic daily for inflammation. (AR 541.) However, on August 19, 2014, Dr. Fine noted that Plaintiff stated that she is using occasional Percocet for severe pain and that she has tried Norco, but it does not give her relief, but she was using Lodine at that time as an anti-inflammatory and she found it helpful. (AR 539.)

In addition, the ALJ found that Plaintiff did not receive any mental health treatment or counseling other than medication. (AR 19, 303-543.) Plaintiff had no hospitalizations for mental health reasons, and she took only Zoloft and Ativan for her mental health issues. (AR 19, 527.)

Therefore, the Court finds that the ALJ's finding that Plaintiff received conservative treatment was a clear and convincing reason supported by substantial evidence for not finding Plaintiff fully credible.

2. <u>Objective Medical Evidence</u>

Plaintiff does not specifically address whether the ALJ erred in discrediting her complaints based upon the lack of objective medical evidence, but she does argue that there are

11

objective findings to support her complaints. Defendant contends that the ALJ properly discredited Plaintiff because of the lack of objective evidence supporting Plaintiff's symptoms.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). However, the ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991).

As the ALJ pointed out, the diagnostic findings as set forth in Dr. Huang's December 2, 2010 report showed minimal osteoarthritic changes with minimal osteoarthritis in the left knee and right hand with negative findings in the right knee and left hand. (AR 21-22, 369-371.) Plaintiff's lumbar spine x-rays were normal. (AR 371.) The ALJ also pointed out that Plaintiff's September 23, 2011 physical examination with Dr. Donald Pang showed normal gait, with only some tenderness of the bilateral knees and wrists, yet normal strength and ranges of motion. (AR 22, 446-448.) Dr. Pang did find that both of Plaintiff's hands are injured when testing the grip strength. (AR 447.) Her right hand was 20, 15, and 9 lbs and her left hand was 10, 28, and 19 lbs. (AR 447.) Dr. Pang noted that under the AMA Guidelines, Plaintiff demonstrated full range of motion of her hands, wrists, elbows, shoulders, and lower extremities and that she would have a 0% impairment. (AR 448.)

Plaintiff points to positive findings in Dr. Fine's March 22, 2012, August 30, 2012, and November 20, 2013 reports. On March 22, 2012, Dr. Fine noted that Plaintiff had positive Phalen's and Tinel's signs in both hands and that passive range of motion of the wrists was painful in flexion to extension. (AR 320.) However, Dr. Fine also noted that Plaintiff could fully supinate and pronate the forearms, could fully flex and extend at the elbow, and that she has full active range of motion of the wrists and all the digits. (AR 320.) Plaintiff's sensation was grossly intact in the upper extremities and hands, although Dr. Fine noted that her grip strength appeared quite diminished in both hands. (AR 320.) Plaintiff had full active range of motion,

negative apprehension sign, and negative McMurray's sign in both knees. (AR 320.) Plaintiff's right knee had no crepitus on passive flexion to extension, no laxity in the joints, and mildly painful patellar compression. (AR 320.) Plaintiff's left knee had positive crepitus with popping sensation in the left knee in passive range of motion, some mild valgus laxity with stress testing, and painful patellar compression. (AR 320.)

On August 30, 2012, Dr. Fine noted that Plaintiff had positive Phalen's and Tinel's signs in both hands, passive range of motion of hands and wrists appeared painful, and the Finkelstein's maneuver was painful in both hands at the lateral aspect of the wrists. (AR 310.) However, she had full active range of motion, she could fully supinate and pronate both forearms, she could fully flex and extend at the elbows, and her grip strength was adequate. (AR 310.) The examination of her knees had the same results as on March 22, 2012. (AR 310, 320.)

On November 20, 2013, Dr. Fine noted that Plaintiff had some limited range of motion in her neck and back and that she exhibited diffuse myofascial pain with trigger point tenderness with a positive jump sign throughout the cervical, thoracic, and lumbar paraspinal musculature and shoulder girdle areas, including tenderness over the medial condyles of the knees and lateral epicondyles of the elbows. (AR 541.) Plaintiff's shoulders had some mild limited range with mildly positive impingement signs. (AR 541.) Plaintiff's left knee had full active range and negative McMurray's sign and there was no examination of Plaintiff's right knee. (AR 541.)

Although the evidence may be interpreted in a light more favorable to Plaintiff, the ALJ's interpretation is rational and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Burch, 400 F.3d at 680–81 (quoting Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).

While an ALJ cannot make an adverse credibility determination solely based upon the lack of medical evidence, it is a factor that the ALJ can consider. Burch, 400 F.3d at 681. The Court finds that substantial evidence supports the ALJ's findings that Plaintiff's complaints of disabling pain are not supported by the objective evidence in the medical record.

    3.    <u>Activities of Daily Living</u>

The ALJ also discredited Plaintiff because her daily activities "are not limited to the

1  extent one would expect, given the complaints of disabling symptoms and limitations." (AR 22.)
2  The ALJ elaborated by stating that "[t]he claimant reported that she was capable of managing her
3  own personal care, driving an automobile, doing some laundry, some cleaning, and shopping for
4  groceries once a week (Exhibits 4E and 5E). She also reported that she socialized with family,
5  watched television and read a book daily (Exhibit 4E and 5E)." (AR 22.)

There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).

In this instance, the ALJ's opinion does not identify any functional limitations that Plaintiff is alleging which are inconsistent with the activities identified. While daily activities may be a valid basis on which to reject a claimant's testimony, Orn, 495 F.3d at 639; Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014), the ALJ did not set forth the specific functional limitation testimony that was inconsistent with Plaintiff's alleged activities. Therefore, the Court cannot ascertain if this would be a clear and convincing reason to reject Plaintiff's testimony. The Court notes that to the extent that the ALJ was discrediting Plaintiff's credibility because her daily activities meet the threshold for transferable work skills, the ALJ did not explain how Plaintiff was able to spend a substantial part of her day engaged in pursuits involving the performance of functions that are transferable to a work setting. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Therefore, the Court finds that Plaintiff's daily activity, as set forth by the ALJ, is not a clear and convincing reason supported by substantial evidence for an adverse credibility finding. As the Court stated above, Plaintiff's daily activity may have been a clear and convincing reason supported by substantial evidence in this matter if the ALJ had set forth the specific functional limitation testimony that was inconsistent with Plaintiff's alleged activities or explained how the activities meet the threshold for transferable work skills.

///

///

14

4.  <u>The ALJ Provided Clear and Convincing Reasons to Find Plaintiff's Testimony Not Credible</u>

Although one of the reasons provided by the ALJ to discredit Plaintiff's testimony is not a clear and convincing reason supported by substantial evidence, any such error is harmless as the ALJ provided two other reasons for the adverse credibility finding. See Carmickle, 533 F.3d at 1162. Accordingly, the Court finds that the ALJ provided clear and convincing reasons for the adverse credibility finding that are supported by substantial evidence in the record.

**C.  Treating Physician Opinion**

Plaintiff argues that the ALJ erred in giving partial weight to the opinion of Dr. Fine, her treating physician. Defendant counters that the ALJ provided specific and legitimate reasons for giving partial weight to the opinion of Dr. Fine.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

On May 12, 2013, Dr. Fine completed a residual functional capacity form for Plaintiff. (AR 512-516.) Dr. Fine opined that Plaintiff could rarely lift and carry less than 10 pounds, sit less than 2 hours, and stand and walk less than 2 hours in an 8-hour workday, and would need unscheduled breaks for 10 minutes every hour. (AR 514-515.) He further opined she could occasionally look up and down, hold her head in a static position, twist, stoop, crouch, and climb ladders and stairs. (AR 515-516.) He also opined that Plaintiff could bilaterally grasp, turn, and twist objects with her hands, do fine manipulations with her fingers, and reach with her arms, including reaching overhead 50% of an 8-hour workday, and she would be absent from work more than 4 days per month. (AR 516.)

The ALJ gave partial weight to Dr. Fine's opinion because "this examination was not accompanied by any imaging and the limitations are more restrictive than the objective evidence suggests." (AR 22.) Dr. Fine did not specifically point to any imaging results in his opinion, although he did identify the clinical findings and objective signs as a dictated report. (AR 513.) The imaging results as set forth in Dr. Huang's December 2, 2010 report showed minimal osteoarthritic changes with minimal osteoarthritis in the left knee and right hand with negative findings in the right knee and left hand. (AR 21-22, 369-71.) Plaintiff's lumbar spine x-rays were normal. (AR 371.) Further, the objective findings from examinations, which are discussed in detail in the objective findings section for Plaintiff's credibility, do not support Dr. Fine's limitations.

Therefore, the Court finds that the ALJ provided specific and legitimate reasons for giving partial weight to Dr. Fine's opinion that are supported by the entire record.

**D.     Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ erred by failing to include all her limitations in the RFC. A

claimant's residual functional capacity is the most the individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

Here, the ALJ based the RFC on the overall medical evidence in the record, as well as Dr. Pang's opinions. (AR 21-22.) Dr. Pang examined Plaintiff and opined that Plaintiff could not perform repetitive forceful gripping and grasping and could not stand and walk for prolonged periods of time. (AR 450.) The ALJ gave significant weight to the opinion of Dr. Pang, an Agreed Medical Examiner who conducted Plaintiff's workers' compensation evaluation, because the opinion is consistent with the overall evidence in the record. (AR 21.) The ALJ also gave partial weight to Dr. Fine's opinion and State agency consultants, L. Bobba, M.D., and Michael Peril, M.D. (AR 22.) As discussed above, the Court finds that the ALJ properly only gave partial weight to the opinion of Dr. Fine and properly found Plaintiff's testimony not fully credible.

While Plaintiff may disagree with the ALJ's interpretation of the medical evidence, the ALJ properly considered the medical evidence and there is substantial evidence in the record to support the finding that Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours, and stand and walk 6 hours in an 8-hour workday, with the ability to alternate between sitting and standing no more often than every 30 minutes; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but must never climb ladders, ropes, or scaffolds; frequently bilaterally use hand controls, handle, finger, feel, and reach overhead; occasionally have concentrated exposure to extreme cold and vibration,

17

but must avoid unprotected heights; and perform simple routine tasks. Therefore, the Court finds that the ALJ did not err in formulating the RFC.

## V.
## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED;

2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Maria Maldonado; and

3. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **October 4, 2017**

_____
UNITED STATES MAGISTRATE JUDGE